320 F.Supp.2d 873 (2004)
In re: OPERATION OF THE MISSOURI RIVER SYSTEM LITIGATION
North Dakota et al.,
v.
U.S. Army Corps of Engineers,
Nos. 03-MD-1555(PAM), 03-4288(PAM).
United States District Court, D. Minnesota.
April 12, 2004.
*874 Daniel H. Israel, Boulder, CO, Lisbeth Jane Nudell, Nudell Law Office, Mpls, MN, David D. Cookson, Jon C. Bruning, Nebraska Atty General's Office, Donald G. Blankenau, Thomas R. Wilmoth, Fennemore Craig PC, Lincoln, NE, for Intervenor Plaintiffs.
Anne E. Mahle, Brian Boru O'Neill, Peter C. Hennigan, Richard A. Duncan, Faegre & Benson, Mpls, MN, Cassandra Sturkie, David A. Becker, David J. Hayes, Janice M. Schneider, Julia A. Hatcher, Latham & Watkins, Sam Kalen, Van Ness Feldman PC, Timothy D. Searchinger, Environmental Defense, Washington, DC, for Intervenor.
James A. Maysonett, US Dept of Justice, Environment and Natural Resources, Washington, DC, for Cross Defendant.

MEMORANDUM AND ORDER
MAGNUSON, District Judge.
This matter is before the Court on Defendants U.S. Army Corps of Engineers, Brigadier General William T. Fasoli, and Colonel Kurt F. Ubbelohde's Motions to Dismiss Plaintiffs' Complaint and the Complaints of Intervenors Nebraska and South Dakota. In October 2003, Plaintiffs' filed their opposition to the Motion to Dismiss and filed a cross-Motion for Partial Summary Judgment. In November 2003, Nebraska filed a Motion for Summary Judgment. Pursuant to the Court's March 9, 2004, Amended Scheduling Order, all parties were permitted to file supplemental memoranda. On April 1, 2004, Plaintiffs' filed a Motion to File an Amended Complaint. For the following reasons, the Court grants the Motions to Dismiss Plaintiffs' Complaint and the Complaints of Intervenors Nebraska and South Dakota and denies the remaining motions as moot without prejudice.

BACKGROUND
The Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., was enacted "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In order to achieve this objective, the CWA directs the states to promulgate water quality standards. 33 U.S.C. § 1313(a). Water quality standards are specific to a particular body of water, and must satisfy certain procedural and substantive requirements to be valid. Id. § 1313(c). In particular, the CWA requires that state water quality standards be established "taking into consideration *875 their use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial and other purposes, and also taking into consideration their use and value for navigation." Id. § 1313(c)(2)(A). Water quality standards must consist of both a designated use for the navigable body of water at issue, and a water quality criteria for this body of water based on such use. Id. § 1332(2)(A).
North Dakota enacted water quality standards under the CWA. N.D. Admin. Code, Ch. 33-16-02.1 et seq. Lake Sakakawea, the reservoir created by the Garrison Dam, is located in North Dakota on the Missouri River. Lake Sakakawea has a designated use as a "cold water fishery," requiring that the water must be "capable of supporting growth of salmonid fishes and associated aquatic biota." Id. § 33-16-02.1-09(1)(f). The water quality criteria for Lake Sakakawea requires that the water not exceed temperatures of 85 degrees fahrenheit, and maintain a dissolved oxygen content of at least 5 mg/l. Id. at Table 1. These regulations also contain narrative standards.
In February 2003, the North Dakota Department of Health issued a "Notice of Violation" of North Dakota's water quality standards against Defendants U.S. Army Corps of Engineers, Brigadier General William T. Fasoli, and Colonel Kurt F. Ubbelohde (collectively, "the Corps"), with respect to their operation of the Garrison Dam and Lake Sakakawea. In April 2003, the State of North Dakota, Governor John Hoeven, and Attorney General Wayne Stenehjem (collectively, "North Dakota"), filed their Complaint in state court, seeking a declaration that the Corps' management of the river in 2003 violated North Dakota's water quality standards, and injunctive relief requiring that the Corps comply with such standards. On April 30, 2003, the Corps removed the case to the United States District Court for the District of North Dakota.[1] In July 2003, Judge Hovland denied North Dakota's Motion for a Preliminary Injunction. North Dakota v. U.S. Army Corps of Eng'rs, 270 F.Supp.2d 1115 (D.N.D.2003).
In June 2003, the Corps filed this Motion to Dismiss the Complaint, claiming that there had been no waiver by the Government of its sovereign immunity. In response, North Dakota's Motion for Partial Summary Judgment asserts that the CWA waives immunity for the Corps. In response to this Motion for Summary Judgment, the Corps further argues that the Court lacks jurisdiction, on the basis that North Dakota's claims are moot and no longer ripe for review. The supplemental memoranda filed the parties asserts the same arguments.

DISCUSSION

A. Standard of Review
For the purposes of the Motion to Dismiss, the Court takes all facts alleged in the Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir.1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." *876 Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

B. Sovereign Immunity
North Dakota seeks a declaration that the Corps must comply with its state water quality standards. (Compl. at 16-17.) In denying North Dakota's Motion for a Preliminary Injunction, Judge Hovland iterated North Dakota's most significant obstacle:
Although the Corps of Engineers has been held liable for non-compliance with state water quality laws in one other reported decision, the courts have yet to see one state along a major river system comprised of several dams and reservoirs spread over many states succeed in a state water quality standards enforcement action.
North Dakota v. U.S. Army Corps of Eng'rs, 270 F.Supp.2d 1115, 1128 (D.N.D.2003) (North Dakota I) (distinguishing Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs, 132 F.Supp.2d 876 (D.Or.2001) (determining that § 1323(a) requires federal facilities and activities to comply with state water quality standards)). In particular, Judge Hovland noted that "the issue of sovereign immunity looms large in this case." North Dakota I, 270 F.Supp.2d at 1128.
Sovereign immunity protects the federal government and its agencies from suit. This immunity must be unequivocally waived by an act of Congress. U.S. Dep't of Energy v. Ohio, 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). "Waivers of immunity must be construed strictly in favor of the sovereign." Id. (citations omitted). Therefore, in order for North Dakota to maintain this suit, the CWA must waive immunity for the Corps.

1. 33 U.S.C. § 1323(a) Waiver of Sovereign Immunity

33 U.S.C. § 1323(a) states in relevant part:
Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants ... shall be subject to, and comply with, all Federal, State, interstate and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution ... in the same manner, and to the same extent as any nongovernmental entity.
To claim sovereign immunity, the Corps must show that this statute does not apply. The Corps argues that this statute only constitutes a waiver in "discharge or runoff" cases, which North Dakota concedes this case is not. The Corps relies heavily on the Eighth Circuit's limited interpretation of the statute:
The district court held that the [CWA] subjects the Corps of Engineers to state water quality laws only if it were causing "the discharge or runoff of pollutants." The district court concluded [that] the [Missouri State Clean Water Act] did not apply because soil erosion and reduction of oxygen did not constitute a "discharge" or "runoff" of pollutants ... [w]e cannot say that the district court erred in finding [that] the [Missouri State Clean Water Act] did not apply.
Missouri ex rel. Ashcroft v. Dep't of the Army, 672 F.2d 1297, 1304 (8th Cir.1982). According to the Corps, Ashcroft limits the waiver of immunity to discharge or runoff cases only. 33 U.S.C. § 1323(a)(2). However, it likewise clear from Ashcroft that *877 the Eighth Circuit did not consider the possibility that immunity could be waived if the Government had jurisdiction over the particular property or facility. See 33 U.S.C. § 1323(a)(1). This statute is disjunctive, in that immunity can be waived either because the Government has jurisdiction over the particular property or facility, or because the Government has engaged in activities that result in the runoff or discharge of pollutants. 33 U.S.C. § 1323(a). Because there is no dispute that the Corps has jurisdiction over the Garrison Dam and Lake Sakakawea, it is possible that this statute may waive sovereign immunity for the Corps. 33 U.S.C. § 1323(a)(1).

2. 33 U.S.C. § 1371 Waiver of Sovereign Immunity

However, even if § 1323(a) constituted a waiver of sovereign immunity in this particular case, it would not be a complete waiver of sovereign immunity. See North Dakota I, 270 F.Supp.2d at 1123. The CWA further provides:
[The CWA] shall not be construed as (1) limiting the authority or functions of any officer or agency of the United States under any other law or regulation not inconsistent with this chapter; (2) affecting or impairing the authority of the Secretary of the Army (A) to maintain navigation ...
33 U.S.C. § 1371. Thus, § 1371 provides sovereign immunity for the Corps when compliance with North Dakota's water quality standards might affect or impair the authority of the Corps to maintain navigation.
The Corps must operate the Missouri River to control flooding and maintain downstream navigation. ETSI Pipeline Project v. Missouri, 484 U.S. 495, 512, 108 S.Ct. 805, 98 L.Ed.2d 898 (1988); see 33 U.S.C. § 701 et seq. (Flood Control Act ("FCA")); see also H.R. Doc. No. 475, 78th Cong., 2d Sess. 28-29 (1944); S. Doc. No. 247, 78th Cong., 2d Sess. 3 (1944). North Dakota's current water quality laws require that the levels of Lake Sakakawea remain at certain height and gas levels to maintain the reservoir as a cold water fishery. Here, the Corps is faced with an either-or situation: it can either comply with North Dakota's water quality standards and potentially violate its statutory obligation under the FCA to maintain navigation, or it can operate as required under the FCA and potentially violate North Dakota's water quality standards. Although it is possible that the Corps may be able to simultaneously meet both its obligations to maintain navigation and the water quality standards established by North Dakota, the Court simply cannot require the Corps to always do both.[2] In this instance, water quality standards that require specific water levels and gas compositions in a reservoir that segments a major river system that traverses multiple states affects the Corps' ability to maintain navigation. Therefore, in this instance, the Court finds that the CWA does not provide for a complete waiver of sovereign immunity.[3]
*878 Plaintiffs attempt to present a genuine issue of material fact on whether North Dakota's water quality standards actually affect or impair "navigation." Plaintiffs submit that maintaining navigation simply requires that the Missouri river have "enough water flowing down the river to at least float a canoe." (Pls.' Mem. Mar. 26, 2004 at 17.) Plaintiffs also submit that "[n]avigation under the CWA does not mean navigation as the Corps interprets navigational requirements under the FCA," but provides no authority for this proposition. (Id.) As Plaintiffs admit, the phrase "to maintain navigation" in 33 U.S.C. § 1371(a)(2)(A) has not been construed by the courts. If the Court were to construe "navigation" as Plaintiffs propose, the force and effect of the FCA and the power it confers on the Corps in its operation of the Missouri River would be nonexistent. There is no evidence that Congress intended such a result. In fact, it appears that Congress failed to envision this exact situation, of a state water quality enforcement action against the Government, in its operation of a major interstate river system. Therefore, the Court declines to accept Plaintiffs' proposition, and instead construes the FCA and the CWA consistently.

C. Other Considerations
The Court is also persuaded by the principles of preemption. When federal and state laws conflict, the Supremacy Clause requires that the federal law prevail. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Even though North Dakota enacted its state water quality standards pursuant to federal law, its state laws must comport with federal law. "Preemption ... will arise when state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (citations omitted). Requiring the Corps to comply with North Dakota's water quality standards irrespective of the Corps' other obligations and existing river conditions circumvents the intention of Congress in its enactment of the FCA and the CWA. The Court cannot order that the Corps to violate its federal statutory obligations to comply with a state water quality standard.
The Missouri River basin has been plagued by a prolonged drought, and as evidenced by this litigation, the Corps' ability to fully provide for all of the competing basin interests has been difficult. North Dakota is attempting to put its interest above the other interests in the Missouri River basin. Common sense, above all else, cannot permit such litigation to succeed. Permitting this litigation would undoubtedly result in each state along the Missouri River seeking to enforce its own water quality standards. The Court is not in the position to determine which state's water quality standards prevail over the other. The operation of the Missouri River cannot be controlled by state water quality standards alone. The Corps' operation of the Missouri River must be examined in its entirety, together with all of the competing interests. As the parties are well aware, that issue is currently before the Court. Requiring that the Corps always comply with North Dakota's state water quality laws in its operation of the Missouri River impairs the Corps' ability to maintain navigation, and its ability to comply with the FCA. Therefore, the Court grants the Corps' Motion to Dismiss North Dakota's Complaint.
Additionally, because there remains no case or controversy for the Complaints in Intervention, the Complaints of South Dakota and Nebraska are also dismissed. The Court believes that the claims filed by South Dakota and Nebraska in the related *879 cases will sufficiently provide an avenue for relief. Nebraska's Motion for Summary Judgment is thus moot. Finally, although North Dakota filed a Motion to Amend its Complaint in this action, based on the foregoing, this Motion is also moot.
Accordingly, based on all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:
1. The Corps' Motion to Dismiss North Dakota's Complaint (Clerk Doc. No. 60) is GRANTED;
2. The Corps' Motions to Dismiss the Complaint of Intervenors Nebraska and South Dakota (Clerk Doc. No. 49) are GRANTED;
3. Nebraska's Motion for Summary Judgment (Clerk Doc. No. 76) is DENIED as moot;
4. North Dakota's Motion for Partial Summary Judgment (Clerk Doc. No. 79) is DENIED as moot; and
5. North Dakota's Motion to Amend its Complaint (Clerk Doc. No. 99) is DENIED as moot.
LET JUDGMENT BE ENTERED ACCORDINGLY.
NOTES
[1] Nebraska and South Dakota intervened in this action. South Dakota seeks an order that water elevations in other main stem reservoirs not be lowered in order to raise the water in Lake Sakakawea, and Nebraska requests that the Corps maintain downstream interests by drawing from the upper reservoirs. (Defs.' Mem. in Supp. of Mot. to Dismiss.) In addition to this case, Nebraska and South Dakota have brought their own individual lawsuits against the Corps. These suits are pending before this Court.
[2] This same theory applies to all of the states along the Missouri River basin. The Court simply cannot order that the Corps always comply with the water quality standards of each state, in the Corps' operation of an interstate river system. Although it may be possible for the Corps to successfully comply with all of the states' water quality laws, an order of absolute compliance disregards the Corps' other obligations under federal law.
[3] The Court declines to determine whether the FCA trumps the CWA in all instances. Rather, the Court narrowly holds that North Dakota cannot maintain a state water quality enforcement action that requires absolute compliance by the Corps, in the controlled operation of a major river system that runs through many states.